# MATTER OF SCANDINAVIAN AIRLINES FLIGHT #SK 911

## In Fine Proceedings

## NYC 10/52.6793

### Decided by Board February 26, 1991

(1) Any bringing to the United States of an alien who does not meet the visa requirements of the Immigration and Nationality Act when he is presented for inspection incurs fine liability under section 273 of the Act, 8 U.S.C. § 1323 (1988), even in cases where it is established that the alien had a visa in his possession when he boarded the carrier's airplane abroad for the flight to the United States.

(2) While the fact that an alien had a visa in his possession when he boarded the carrier's airplane abroad may entitle the carrier to remission (forgiveness in full) under section 273(c) of the Act, the carrier has the burden of establishing that fact, and that burden of proof has not been met in this case.

BASIS FOR FINE: Act of 1952—Sec. 273 [8 U.S.C. § 1323]—Bringing to the United States immigrants not in possession of unexpired visas

ON BEHALF OF CARRIER:
Peter J. Wade, Esquire
Hale Russell & Gray
101 Park Avenue
New York, New York 10178

ON BEHALF OF SERVICE:
Steven R. Abrams
District Counsel

BY: Dunne, Acting Chairman; Vacca, Board Member; Bryant, Temporary Board Member

In a decision dated March 5, 1984, the district director imposed administrative fines totalling $8,000 on Scandinavian Airlines (the "carrier") for eight violations of section 273(a) of the Immigration and Nationality Act, 8 U.S.C. § 1323(a) (1982), and denied a request from the carrier for remission of the fines. The carrier has appealed. The appeal will be dismissed.

The carrier brought the above-named alien passengers to the United States from Denmark on August 8, 1983. On September 30, 1983, the district director issued a Notice of Intention to Fine under Immigration and Nationality Act (Form I-79) in which he alleges that the carrier violated section 273 of the Act by bringing the eight alien passengers to the United States without visas, and, therefore, that the carrier is liable for administrative fines totalling $8,000.

In a response dated October 28, 1983, the carrier protested the imposition of fines. According to the carrier, the eight aliens initially boarded a flight in Calcutta, India, on August 7, 1983. Their tickets showed New York as their final destination with a connecting flight originating in Copenhagen. When they boarded in India, they presented passports from the Republic of Sudan with United States visas in the passports. Upon arrival at Copenhagen later that day, the aliens were issued transit visas from the Government of Denmark in the names listed in the Sudanese passports, and they were permitted entry into Denmark to proceed on the carrier's flight to New York. When they arrived at the New York airport on August 8, 1983, however, they presented passports issued by the Government of Afghanistan which showed names different than the ones on the tickets, the transit visas, and so forth. The Afghan passports did not have United States visas. The carrier concludes that it exercised reasonable diligence in ascertaining at the original point of embarkation that the aliens had Sudanese passports with unexpired United States visas, and, therefore, fines should not be imposed.

With a cover letter dated November 1, 1983, the carrier submitted photocopies of the tickets the alien passengers had purchased and copies of their transit visas for passage through Denmark. The carrier notes in the letter that the aliens apparently disposed of the Sudanese passports and used their Afghan passports when they arrived at the New York airport. The carrier asserts that none of its agents, representatives, or employees was a party to this fraud. The carrier concludes the letter with a request that remission be considered in view of those circumstances.

The record also contains copies of affidavits executed by the alien passengers on August 8, 1983, during interviews with Immigration and Naturalization Service officials. The aliens state that they purchased boarding tickets from someone and used them to board the carrier's flight to the United States. They state further that no one checked their passports.

In a decision dated March 5, 1984, the district director found that the passengers were aliens who did not have visas in their possession when they were brought to the United States. He rejected the carrier's claim that the aliens had presented Sudanese passports that contained United States visas when they boarded initially. Although the carrier submitted photocopies of airline tickets and Danish transit visas showing Sudanese nationality for a group of passengers, the carrier has failed to prove that these passengers were the aliens in question. The district director concluded that cancellation of the fines was not justified and imposed fines totalling $8,000 on the carrier.

On appeal, the carrier contends that the documents of the alien

passengers were checked before they were boarded initially, and the aliens had passports with unexpired visas at that time. Consequently, due diligence was exercised and the fines should be remitted in full. As further support for this position, the carrier has submitted an affidavit executed by an employee of a travel agency on March 21, 1984, which lists the names of eight alien passengers who presented proper documents for a flight to the United States. The names are "J.F. Callan," "T.M. Callan," "J.C. Kramer," "R.H. Barrack," "J.E. Barrack," "R.K. Hutton," "H. Augustine," and "C. Newtan."

The Service contends that the carrier is liable for $8,000 in fines and that the carrier has failed to meet its burden of proof for remission. We agree.

Fines under section 273 of the Act are imposed without regard to the intentions of the carrier. Under the provisions of section 273 of the Act, the carrier who brings aliens to the United States becomes, in effect, an insurer that the aliens have met the visa requirements of the Act. Any bringing to the United States of an alien who does not meet those requirements incurs fine liability. *Matter of M/V "Emma,"* 18 I&N Dec. 40 (BIA 1981). Inasmuch as the eight alien passengers did not have visas in their possession when the carrier brought them to the United States, the carrier committed eight violations of section 273 of the Act. The carrier is therefore liable for fines totalling $8,000.

Section 273(c) of the Act permits remission (forgiveness in full) where it appears that prior to the alien's departure from the last port outside the United States, the carrier did not know, and could not have ascertained with the exercise of reasonable diligence, that a visa was required. What constitutes "reasonable diligence" varies according to the circumstances of the case. *Matter of "S.S. Florida,"* 3 I&N Dec. 111 (BIA 1947, 1948; A.G. 1948). In the present case, the carrier has claimed that the passengers had unexpired visas in their possession when they were boarded initially. The carrier, however, has failed to substantiate this claim. The evidence the carrier has submitted in this regard shows that eight alien passengers had passports with visas in them. The names on the documents presented by the eight alien passengers with visas, however, are not the same as the names of the aliens in question, and the carrier has failed to show by any other means that the aliens in question are the ones who presented the visas. Moreover, the affidavits executed by the aliens in question indicate that they did not have visas in their possession when they boarded the carrier's flight and that no one checked their documents. We conclude, therefore, that the carrier has failed to establish that remission is warranted under the provisions of section 273(c) of the Act.

Accordingly, the following order will be entered.

**ORDER:** The appeal is dismissed.